# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 13, 2013 Session

## STATE OF TENNESSEE v. JEREMY WENDELL THORPE

**Appeal from the Criminal Court for Davidson County**
**No. 2012-B-1224     Monte Watkins, Judge**

---

**No. M2012-02676-CCA-R3-CD - Filed September 27, 2013**

---

The defendant, Jeremy Wendell Thorpe, appeals his Davidson County Criminal Court jury conviction of attempted sexual battery by an authority figure, claiming that the trial court erred by providing a jury instruction on attempted sexual battery by an authority figure as a lesser included offense of sexual battery by an authority figure and that the evidence was insufficient to support his conviction. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Jeffrey A. Devasher (on appeal); and Kristin Neff and Aimee Solway (at trial), Assistant Public Defenders, for the appellant, Jeremy Wendell Thorpe.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Sharon Reddick and Sarah Blood, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendant's conviction relates to an act of abuse perpetrated on his girlfriend's daughter, K.S.[1]  At trial, K.S., who was 15 years old at the time of trial, testified that before the summer of 2010, she lived with her mother, her older brother, and the defendant, who was her mother's boyfriend, in an apartment in Hermitage. K.S. recalled that her mother began dating the defendant when K.S. was in fourth grade, and the defendant

---

[1]In keeping with the policy of this court, we refer to the minor victim by her initials.

moved in with them soon after. She said that the family moved to Nashville in 2009. K.S. testified that her mother allowed the defendant to handle disciplining the children, which he did by spanking them and taking away their things. She said that her mother "basically just went along with whatever he said."

K.S. recalled that her brother went to live with her grandmother in the summer of 2010 after an argument with the defendant. K.S. testified that after her brother left, she felt "[u]nsafe" around the defendant because the defendant had previously touched her in a way that made her uncomfortable. On one occasion, she said, the defendant hit her on the buttocks as she lay on her stomach "hunched over a pillow." On another occasion, the defendant "slapped" her on the buttocks while she was doing the dishes. She said that she "didn't like it at all." K.S. testified that after her brother moved, the defendant began touching her more often, rubbing her feet and doing things that "a boyfriend would do." She said that the defendant also started kissing her on the cheek but quickly progressed to "trying to French kiss" her and kissing her on the legs. She said that she told the defendant that his behavior was "not normal." K.S. said that if she refused the defendant's advances, "there would be a lot of nonsense." She said that she did not tell her mother about the defendant's behavior because her mother had already forced her brother to move out of the house because of the defendant.

K.S. testified that on August 27, 2010, the defendant sent her sexually suggestive text messages that eventually culminated in his saying, "I want to kiss on them thighs when I get back." The victim testified that she responded, "okay," because she was afraid that the defendant would "take like everything, basically" and "tear [her] down verbally" if she rebuffed him. K.S. said that when the defendant returned home that evening and saw that she was still wearing pants, the defendant told her that she made "everything so difficult" and ordered her to change. She said that she initially refused but complied when the defendant said, "[D]o what I say or else." K.S. testified that after she changed into shorts, the defendant came into her room and "kissed like [her] inner thighs." She said that she sat on the edge of the bed with her feet on the floor while the defendant kneeled between her legs "just kissing." K.S. recalled that the defendant put his hands on the outside of her thighs while his head was "on [her] inner thighs" as he kissed up to her "bikini line." K.S. said that she cried during the encounter.

K.S. testified that she relayed the incident to her grandmother, who told K.S. to speak to her school counselor on the following Monday. K.S. said that she did as her grandmother suggested, and her counselor called detectives. After relating the incident to detectives, K.S. moved directly to Memphis with her grandmother, which she had wanted to do for a while. K.S. denied manufacturing the story so that she could live with her grandmother. After the incident, K.S. remained estranged from her mother because K.S.

-2-

believed that her mother "would rather be with him."

During cross-examination, K.S. admitted that on the day before she revealed her allegations, her mother and the defendant purchased clothes for K.S. because her mother believed that the tight clothing that the victim typically wore was inappropriate. She said that when she initially told her mother that she felt uncomfortable with the defendant's behavior, her mother simply told her that she could not move out of the home.

The victim's mother, B.S.,[2] testified that she began dating the defendant when the victim was 10 and that, while they dated, she gave the defendant authority to discipline the victim and her brother but that the discipline did not include spanking. She said that the children's father had no role in their lives, so the defendant was the only father figure around. She recalled that the children never liked the defendant and that they "bad-mouthed" the defendant "all the time" and told her that they "didn't want to be around him." Despite this, B.S. said that she hoped the relationship would improve. B.S. recalled that she asked her son to move out after they argued, but she could not recall the substance of the argument. She admitted that the defendant played some role in the argument. B.S. said that when K.S. also expressed a desire to live with her grandmother, B.S. told her "that she was too young," and the defendant "said that absolutely not, she could not go."

B.S. recalled that after her son moved out, the victim's relationship with the defendant improved. She said that the defendant began expressing a desire to take the victim places and do things with her. She said that she did not initially see anything strange about the change in the relationship because her own relationship with the victim during that time was strained. B.S. did not recall arguing with the victim about her clothing on the day that the victim made her revelation but said that neither she nor the defendant approved of the victim's chosen manner of dress. She said that on that day, the defendant told her that the victim was late for school and that he was driving her to school because he had made her wash appropriate clothing to wear to school. Later that day, someone from the victim's school called and asked B.S. to come to the school. B.S. said that the defendant went with her to the school, but detectives separated them as soon as they got there.

B.S. testified that after hearing the allegations, she was angry with both the defendant and the victim. She said that the defendant told her that the victim was lying, and he became angry when she refused to leave the school with him. She said that the defendant told her that she "should take his side and . . . just leave with him and not worry about what happened to" the victim. B.S. testified that she did not move back to Memphis with her mother and the victim because "everything [she] had was" in Nashville.

_____

[2]We refer to this witness by her initials to protect the anonymity of the victim.

Diane Smith, school counselor at Donelson Middle School, testified that on August 30, 2010, the victim came into her office and handed her a piece of notebook paper on which the victim "had written front and back with an orange crayon." Ms. Smith said that, in the note, the victim relayed "that something bad was going on in her home with her mother's boyfriend and she couldn't take it anymore and it had to stop." Ms. Smith asked the victim to elaborate, and the victim said "that when her brother was away from home that the boyfriend would ask her to put on some white shorts usually. And he would start kissing between her legs up in her inner thigh." She said that the victim was visibly upset when reporting the incident. Ms. Smith recalled that the victim told Ms. Smith that "she was afraid that her mother would not believe her and would take the side of the boyfriend."

Metropolitan Police Department Detective Jason Mayo testified that he responded to a call from the school resource officer about the victim's allegations. When he interviewed K.S., she told him that "she was being sexually harassed by her mom's boyfriend." She added that the defendant had sent her "sexually charged text messages" and "that he had kissed her on her inner thigh." She told Detective Mayo that when she refused the defendant's advances, "he would take away all of her stuff, her cell phone, her computer, and even went as far as to take her clothes, her shoes and her clothes away from her at one point." She also told the detective that she had not reported the abuse to her mother because "in the past her mom had taken [the defendant's] side in some situations and she was scared to tell her mom at that point." Detective Mayo said that forensic examination of the victim's cellular telephone confirmed that the defendant had sent a text message to the victim that read, "I want to kiss on them thighs when I get back." Another message asked if the victim would change into shorts. Photographs of the text messages were displayed to the jury.

Detective Mayo testified that he interviewed the defendant when the defendant arrived at the school with B.S. He said that the defendant spoke with them briefly before refusing to answer questions. At that point, Detective Mayo told the defendant that the defendant would need to speak to the Department of Children's Services ("DCS") about a safety plan for K.S., and the defendant "said that she could go into DCS custody." An audio recording of Detective Mayo's brief interview with the defendant was played for the jury.

At the conclusion of Detective Mayo's testimony, the State notified the jury of its election of offenses. As a basis for count three, the conviction count now under review, the State elected the defendant's kissing the victim's inner thighs near her bikini line. Following a *Momon* colloquy, *see State v. Momon*, 18 S.W.3d 152, 161-62 (Tenn. 1999), the defendant elected not to testify and chose not to present any proof. The jury failed to reach a verdict on the first two counts of the indictment, which had charged the defendant with aggravated sexual battery, but found the defendant guilty of the lesser included offense of attempted sexual battery by an authority figure in count three.

-4-

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant contends that the trial court erred by providing a jury instruction on the lesser included offense of attempted sexual battery by an authority figure and that the evidence was insufficient to support his conviction.

*I. Jury Instruction*

The defendant contends that the trial court erred by providing a jury instruction on attempted sexual battery by an authority figure as a lesser included offense of sexual battery by an authority figure. He claims that because the evidence established only a completed offense, the instruction was not warranted. The State asserts that the trial court did not err.

At the conclusion of the trial, the defendant made a written request that the trial court instruct the jury on the offenses of sexual battery and misdemeanor assault as lesser included offenses of sexual battery by an authority figure as charged in count three. Then, citing *State v. Kenneth Fritz Edwards*, No. E2010-01731-CCA-R3-CD (Tenn. Crim. App., Knoxville, May 18, 2012), defense counsel argued that "either the jurors believe that he touched her behind, or they don't" and asked that the trial court not provide a jury instruction on attempt with regard to any of the charged offenses. The State agreed that attempt should not be charged as a lesser included offense in counts one and two but asserted that the proof supported an instruction on attempted sexual battery by an authority figure, arguing that the jurors "could reasonably construe . . . based on the totality of the testimony that what he was doing was an attempt of sexual battery and not ultimately, in their minds, what a sexual battery would be." The State observed that the victim "talked about him putting his hands on the outside of her thighs, she talked about him kissing around her panty line. . . . [The jury] could potentially construe her testimony . . . as that [the defendant's] behavior was more an attempted sexual battery than sexual battery." The trial court lamented the continuing confusion regarding instruction on lesser included offenses, commenting that "if we leave it out [the appellate courts] say we shouldn't have left it out, if we put it in they say we shouldn't have put it in." The court ultimately agreed that the evidence did not warrant an attempt instruction in counts one and two but that the evidence justified an instruction on attempted sexual battery by an authority figure in count three. Consequently, the trial court provided the following instruction during its general charge:

> For you to find the defendant guilty of criminal attempt, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
> (1) that the defendant intended to commit the specific offense of Sexual Battery by an Authority Figure.

-5-

and

> (2) that the defendant did some act intending to cause an essential element of Sexual Battery by an Authority Figure to occur, and at the time believed the act would cause the element to occur without further action on the defendant's part.

Tennessee Code Annotated section 40-18-110 provides that "the trial judge shall instruct the jury as to the law of each offense specifically identified in the request that is a lesser included offense of the offense charged in the indictment or presentment." T.C.A. § 40-18-110(a) (2006). Before providing an instruction on a lesser included offense, however, the trial court must determine whether "the record contains any evidence which reasonable minds could accept as to the lesser included offense." *Id.* The trial court must make this determination by viewing "the evidence *liberally in the light most favorable to the existence of the lesser included offense* without making any judgment on the credibility of evidence" and must "also determine whether the evidence, *viewed in this light*, is legally sufficient to support a conviction for the lesser included offense." *Id.* (emphasis added) "The defendant's objection shall not prevent the district attorney general from requesting lesser included offense instructions or prevent the judge from instructing on lesser included offenses." T.C.A. § 40-18-110(d). "The trial court must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense. The evidence, not the theories of the parties, controls whether an instruction is required." *State v. Allen*, 69 S.W.3d 181, 187-88 (Tenn. 2002). As a result, "the decision to convict on a lesser-included offense" should not "be taken away from the jury" merely because "the element distinguishing the greater offense from the lesser offense is uncontroverted." *Id.* at 189. This standard of review best preserves the jury's role as fact finder. *See id.* (citing Tenn. Const. art. I, § 19 for the proposition that "'the jury shall have a right to determine the law and the facts'").

In *State v. Kevin Fritz Edwards*, a panel of this court concluded that "the trial court should not have instructed the jury on the lesser-included offense of attempted aggravated sexual battery" when "[t]he evidence at trial presented only two possible interpretations of the facts – that the defendant either completed the offense of aggravated sexual battery or he did not." *State v. Kevin Fritz Edwards*, No. E2010-01731-CCA-R3-CD, slip op. at 12 (Tenn. Crim. App., Knoxville, May 18, 2012). In support of its conclusion, the panel cited a number of cases which held that the trial court either did not err by failing to provide an instruction on attempt when the evidence established a completed act or where the reviewing court deemed the omission harmless beyond a reasonable doubt. *Id.* (citing *State v. Marcum*, 109 S.W.3d 300, 304 (Tenn. 2003); *State v. Biggs*, 218 S.W.3d 643, 658 (Tenn. Crim. App. 2006); *State v. Randall Vertis Grainger*, No. M2001-02178-CCA-R3-CD (Tenn. Crim. App., Nashville, Oct. 22, 2002), *perm. app. denied* (Tenn. Mar. 3, 2003); *State*

*v. Joseph Hall*, No. E2006-02403-CCA-R3-CD (Tenn. Crim. App., Knoxville, Oct. 9, 2007), *perm. app. denied* (Tenn. Mar. 10, 2008); *Jerome Sawyer v. State*, No. W2005-01813-CCA-R3-PC (Tenn. Crim. App., Jackson, Mar. 15, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007)). Although our supreme court has clarified that an instruction on attempt is "unnecessary where the evidence clearly establishes completion of the criminal act," *State v. Banks*, 271 S.W.3d 90, 125 (Tenn. 2008) (citing *State v. Wilson*, 211 S.W.3d 714, 721 n.2 (2007); *State v. Robinson*, 146 S.W.3d at 487 n. 7; *Marcum*, 109 S.W.3d at 303-04 (Tenn. 2003); *State v. Ely*, 48 S.W.3d 710, 719 (Tenn. 2001)), we can find no case, save *Kevin Fritz Edwards*, that deems the giving of an attempt instruction reversible error when a completed act is proven. In our view, the opinion in *Kevin Fritz Edwards* should not be followed.

First, although the panel noted the appropriate standard of review when discussing the trial court's giving of an instruction on attempted sexual battery, the panel did not adhere to that standard when conducting its analysis. As indicated, when making the determination whether an instruction on a lesser included offense must be given, the trial court must examine "the evidence *liberally in the light most favorable to the existence of the lesser included offense*." T.C.A. § 40-18-110(a) (emphasis added). Said another way, the trial court must begin its review with the notion that the lesser included offense should be charged and must examine the proof for "any evidence that reasonable minds could accept" in support of the lesser included offense. *Id.* The *Kevin Fritz Edwards* panel failed to do this. The panel noted that if the jury had chosen to fully accredit the testimony of the victim, the evidence would have supported a conviction of aggravated sexual battery and that if the jury had chosen to fully accredit Edwards, it would have acquitted him. The panel therefore concluded that the trial court erred by providing an instruction on attempted aggravated sexual battery as a lesser included offense. This conclusion, however, overlooks three important points. First, the jury, as the sole arbiter of the facts and the credibility of the witnesses, was free to accredit any portion of any witness's testimony as it saw fit. *See Allen*, 69 S.W.3d at 189 ("The jury is not required to believe any evidence offered by the State."); *see also* Tenn. Const. art. I, § 19 ("[T]he jury shall have a right to determine the law and the facts[.]"). The all or nothing dichotomy set up by the panel was not the only available interpretation of the facts open to the jury, who saw and heard the witnesses first hand. Second, Code section 40-18-110 provides that, when determining whether to provide an instruction on a lesser included offense, the trial judge should not make any determination about the credibility of the evidence. Third, the appellate court is obliged to review the aptness of a lesser included offense instruction by considering the evidence in the light most favorable to the existence of the lesser included offense. *See, e.g.*, *State v. Brown*, 311 S.W.3d 422, 431 (Tenn. 2010). Essentially, the panel examined the proof in the light most favorable to each of the parties rather than in the light most favorable to the existence of the lesser included offense, as is required by statute.

Moreover, in concluding that the trial court erred by instructing the jury on attempted aggravated sexual battery as a lesser included offense of aggravated sexual battery, the *Kevin Fritz Edwards* panel observed that "there was no evidence presented at trial that [Edwards] attempted to touch the victim and failed." Failure to complete a criminal offense is not, however, an element of criminal attempt. *See* T.C.A. § 39-12-101. *Cf. Allen*, 69 S.W.3d at 189 ("In this case, the use of a deadly weapon is an element of the charged offense of aggravated robbery. The *absence*, however, of a deadly weapon is not an element of facilitation of robbery."). As our supreme court has observed, "the criminal attempt statute requires that the State prove two material elements: the culpability required for the attempted crime; and an act or acts in furtherance of the attempted crime." *Wyatt v. State*, 24 S.W.3d 319, 323 (Tenn. 2000). The holding in *Kevin Fritz Edwards* elevates a defendant's failure to complete an offense to the status of an element of that offense, an outcome clearly not contemplated by the legislature, which *removed* as a defense "that the offense attempted was actually committed." T.C.A. § 39-12-101(c).

Because absence of a completed offense is not an element of the offense of criminal attempt, proof that the defendant in this case actually completed the crime of sexual battery by an authority figure did not prohibit the giving of a jury instruction on the lesser included offense of attempted sexual battery by an authority figure so long as evidence existed that reasonable minds could accept in support of the lesser included offense.

Most importantly, the evidence in the present case, when viewed in the light most favorable to the existence of the lesser included offense, supported the giving of an instruction on attempted sexual battery by an authority figure as a lesser included offense of sexual battery by an authority figure. The text messages sent by the defendant to the victim declaring that he wanted to "kiss on" her thighs when he returned and asking that she change into shorts clearly telegraphed his intent to engage in the sexual battery of the victim. We agree with the prosecutor, however, that the evidence was susceptible to an interpretation that the defendant's conduct did not amount to the completed offense of sexual battery. The victim described the defendant's "kissing" the inner part of her thighs up to her "bikini line" as his hands rested on the outside of her thighs. In our view, a reasonable mind could have concluded that the defendant attempted to commit sexual battery.

Moreover, viewing the evidence, as we must, in the light most favorable to the existence of the lesser included offense, the evidence was legally sufficient to support the offense of attempted sexual battery by an authority figure. Thus, the trial court did not err by providing an instruction on attempted sexual battery by an authority figure.

-8-

*II. Sufficiency*

Again citing *Kevin Fritz Edwards*, the defendant contends that the evidence was insufficient to support his conviction of attempted sexual battery by an authority figure "because no evidence was presented that the defendant attempted, but did not complete, that offense." The State asserts that the evidence was sufficient because failure to complete the offense "is neither a defense to the prosecution nor a required element of the prosecution." We agree with the State.

We review the defendant's challenge to the sufficiency of the evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

Sexual battery by an authority figure, as charged in this case, "is unlawful sexual contact with a victim by the defendant or the defendant by a victim" where "[t]he victim was, at the time of the offense, thirteen (13) years of age or older but less then eighteen (18) years of age," and "[t]he defendant had, at the time of the offense, parental or custodial authority over the victim and used the authority to accomplish the sexual contact." T.C.A. § 39-13-527(a). "Sexual contact" is "the intentional touching of the victim's, the defendant's, or any other person's intimate parts, . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). Additionally, "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id.* § 39-13-501(2). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." *Id.* § 39-12-101(a)(2).

As indicated, the evidence established that the defendant expressed a desire, via text message, to "kiss on" the victim's thighs and, to facilitate said kissing, asked the victim to change into shorts. The victim testified that she complied with both requests. Describing the offense, the victim said that she was seated on the edge of her bed with her feet on the floor while the defendant kneeled between her legs. She said that he pushed her shorts up to gain access to her thighs and then "kissed" her inner thighs up to her "bikini line." No further description of the offense was given. Although we agree with the parties that a reasonable jury could have found beyond a reasonable doubt that the defendant committed the offense of sexual battery by an authority figure, we also conclude that a reasonable jury could have found beyond a reasonable doubt that the defendant committed the offense of attempted sexual battery by an authority figure.

The defendant, citing *Kevin Fritz Edwards*, argues that because the evidence did not establish that the defendant tried and failed to commit a sexual battery of the victim, the evidence was insufficient to support his conviction. In reaching its conclusion that the evidence was insufficient to support Edwards' conviction, the *Kevin Fritz Edwards* panel concluded "that by acquitting him of the aggravated sexual battery charge the jury rejected [the victim's] testimony that [Edwards] repeatedly touched her breasts, buttocks, and vagina." *Kevin Fritz Edwards*, slip op. at 13. As we have indicated, however, the jury is free to accredit any portion of a witness's testimony when arriving at its verdict. The jury's decision to convict on a lesser included offense does not necessarily equate with a wholesale rejection or adoption of any particular witness's testimony. Again, despite language to the contrary, the panel's decision on the sufficiency of the convicting evidence was colored by its apparent belief that, to support a conviction of criminal attempt, the State must show that the defendant tried and failed to complete the offense. Failure to complete the offense, however, is not an element of criminal attempt.

Both the defendant and the panel in *Kevin Fritz Edwards* cited *State v. Parker*, 350 S.W.3d 883 (Tenn. 2011), in support of a finding that proof of a completed crime renders insufficient the evidence of an attempt. In *Parker*, our supreme court overruled dicta from *State v. Mellons*, 557 S.W.2d 497 (Tenn. 1977), which had been cited for the proposition that a conviction of a lesser included offense would not be reversed for want of evidence when the evidence was sufficient to support a conviction of the greater offense. *State v. Parker*, 350 S.W.3d 883, 907 (Tenn. 2011) ("The proposition for which the majority below relied on it is, in fact, mere dictum."). Parker, originally charged with felony murder in the death of the elderly victim, was convicted of the lesser included offense of second degree murder. *Id.* at 888. The supreme court observed that evidence that Parker struck the elderly victim while attempting to rape her, thereby causing the injury that led to the victim's death, would have supported a conviction of felony murder but that the record was devoid of any proof that Parker knowingly killed the victim, a requirement for a conviction of second degree

murder. *Id.* at 909-10. The court observed that "when reviewing a convicted defendant's claim that the evidence is not sufficient to support his or her conviction, the review must be undertaken with respect to the crime of which the defendant was convicted, not the crime with which he was charged." *Id.* at 907 (citing *Jackson*, 443 U.S. at 324 n.16). The court held that the fact "[t]hat the proof may support conviction of a different, even a 'greater,' offense does not obviate the constitutional requirement that the proof support each and every element of the offense for which the defendant was *actually* convicted." *Parker*, 350 S.W.3d at 907. The court reiterated that, using our traditional standard of review for the sufficiency of the evidence, "[i]f the proof does not adequately support each and every element, the defendant is entitled to a reversal of the conviction" and concluded that "[t]o sustain a conviction of a lesser-included offense, the proof must be sufficient to support each and every element of the conviction offense. To the extent that *Mellons* and its progeny hold to the contrary, they are overruled." *Id.* at 909.

To determine whether the evidence was sufficient to support the defendant's conviction of attempted sexual battery by an authority figure, we must examine the evidence in the light most favorable to the State. This is in contrast to the standard applicable when determining whether a lesser included offense should be charged, which does not view the evidence in favor of either party but in favor of the existence of the lesser included offense. As so happens, the State in this case requested the instruction on attempted sexual battery by an authority figure, so our review of the evidence looks similar. As indicated, to establish the offense of attempted sexual battery by an authority figure, the State was required to show that the defendant intended to commit the offense of sexual battery by an authority figure and that he completed some act that he believed would result in the offense without any further conduct. The State need not have shown that the defendant tried but failed to complete the offense of sexual battery by an authority figure. Here, the evidence, most strikingly in the form of the defendant's text messages to the victim, established that the defendant intended to commit sexual battery by an authority figure. The defendant's ordering the victim to change into shorts, pushing her shorts up, and placing his hands on her thighs can all be classified as acts in furtherance of that offense.[3] In consequence, the evidence was sufficient to support the defendant's conviction of attempted sexual battery by an authority figure.

*Conclusion*

The trial court did not err by instructing the jury on attempted sexual battery by an authority figure as a lesser included offense of sexual battery by an authority figure, and the evidence adduced at trial was sufficient to support the defendant's conviction of

---

[3]Indeed, rare will be the completed crime that does not begin with an intent to commit the crime and an act in furtherance of that intent.

attempted sexual battery by an authority figure. Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE